```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


DAVID CHRISTENSEN and        )
CHRISTINE V. SHEA,           )
                             )
          Plaintiffs,        )
                             )
          v.                 )    Case No. 10 C 2177
                             )
FIFTH THIRD BANK,            )    Magistrate Judge Arlander Keys
                             )
          Defendant.         )
```

## MEMORANDUM OPINION AND ORDER

In this lawsuit, the plaintiffs David Christensen and Christine Shea allege violations of the Truth in Lending Act ("TILA") in connection with the refinancing of their home mortgage through Fifth Third Bank. The case is before the Court on cross motions for summary judgment. For the reasons explained in detail below, both sides' motions are denied.

### Factual Background

David Christensen and his wife Christine Shea reside at 738 Bonaventure Drive in Oswego, Illinois. In 2007, they refinanced the property with a loan from Fifth Third Bank. The transaction was scheduled to "close" on April 10, 2007; on that date, the plaintiffs appeared at the office of Chicago Title Company to sign the necessary paperwork and to consummate the transaction. The plaintiffs were not represented by counsel at that time, but also present was Lori Kovac, the Chicago Title Company closing agent.

The plaintiffs claim that, at the time of the closing on that transaction, they learned for the first time that they were expected to pay in excess of $3,000; because they were not prepared to pay that amount at the time of the closing, they adjourned and agreed to come back with a check, which they claim they did on April 12, 2007. The plaintiffs contend that they did not receive any documents on April 10, but instead received the closing documents on April 12, 2007, when Ms. Shea returned to Chicago Title and tendered the check for the amount owed. Fifth Third disputes that the closing was adjourned on April 10th and disputes that the plaintiffs left the closing on that date empty handed. But Fifth Third concedes that the plaintiffs were required to come up with more than $3,000 to close the deal and concedes that the plaintiffs did not tender that amount on April 10, 2007.

Although this seems like a trivial point, it is not: as will become clear, the date on which the plaintiffs received the closing documents turns out to be a central issue in the case. In connection with the closing, the plaintiffs were provided with a notice of right to cancel, which advised that they could cancel the transaction within three business days from the last occurring of "the transaction date, which is April 10, 2007 or the date you received your Truth in Lending disclosure or the date you received this notice of your right to cancel." Thus,

the notice stated, the plaintiffs had until April 13, 2007 at midnight to cancel the transaction. It is undisputed that they did not cancel by the April 13 deadline.

The plaintiffs contend that, on April 12, 2007, Ms. Shea returned to the Chicago Title office, tendered the amount demanded and was given an envelope containing the documents signed at the closing two days before. Ms. Shea admits that she did not go through the documents when she received them from Chicago Title, but claims that she put them in a file cabinet in her husband's home office. It is undisputed that, after the closing, the plaintiffs made mortgage payments to Fifth Third consistent with the mortgage documents they signed at closing on April 10, 2007; Ms. Shea testified at her deposition that, at some point in 2008, they stopped making their mortgage payments because their attorney advised them that there were problems with the documents they received at their closing. Deposition of Christine Shea, pp. 42-43.

It is undisputed that neither plaintiff opened the envelope of closing documents until 2008, when they brought it to their attorney's office. Ms. Shea testified that, when she went to the title company on April 12th, she handed the receptionist a check for more than $3,000 and the receptionist handed her an envelope, which she placed in a drawer in her husband's home office and did not open until she and her husband were meeting with their

attorney; she did not know, on April 12th, how many copies of the notice of right to cancel she received, but realized, in 2008, that there were only two copies in their envelope.  Shea Dep., pp. 50-52.

On July 9, 2008, the plaintiffs, through their attorney, sent a letter notifying Fifth Third that the plaintiffs were rescinding the loan for failure to comply with TILA.  According to the return receipt, Fifth Third received the notice to rescind on July 11, 2008; it is undisputed that, since that time, Fifth Third has taken no steps to rescind the transaction and done nothing to further that goal.  In fact, it appears that, rather than rescinding the loan, Fifth Third initiated a foreclosure action against the plaintiffs.

On April 8, 2010, the plaintiffs filed this action.  In their complaint, they allege that Fifth Third violated TILA in several ways involving the Notice of the Right to Cancel and the TILA Statement prepared by Fifth Third and provided to them in connection with the closing of the refinancing transaction.  More specifically, the plaintiffs allege, the bank failed to provide the requisite number of copies of the notice of the Right to Cancel; included the wrong date on that notice; failed to provide accurate information on the TILA statement; and failed to take steps to rescind the contract once the plaintiffs exercised their right to cancel.  With regard to the TILA statement, the

plaintiffs allege in their complaint that Fifth Third

> failed to deliver to PLAINTIFFS, all "material" disclosures required by the Act and Regulation Z including the following:
>
> > A.  By failing to properly and accurately disclose the "amount financed," using that term in violation of Regulation Z §226.18(b) and 15 U.S.C. §1638(a)(2)(A).
> > B.  By failing to properly and accurately disclose the "finance charge," using that term, in violation of Regulation Z §§226.4 and 226.18(d) and 15 U.S.C. §1638(a)(3).
> > C.  By failing to clearly and accurately disclose the "annual percentage rate," using that term, in violation of Regulation Z §226.18(e) and 15 U.S.C. §1638(a)(4).
> > D.  By failing to properly disclose the number, amounts, and timing of payments scheduled to repay the obligation, in violation of Regulation Z §226.18(g) and 15 U.S.C. §1638(a)(6).
> > E.  By failing to properly and accurately disclose the "total of payments," using that term, in violation of Regulation Z §226.18(h) and 15 U.S.C. §1638(a)(5).

Complaint, ¶23. Fifth Third denies these allegations.

The case is before the Court on cross motions for summary judgment. The plaintiffs argue that the bank's violations of TILA are clear and that they are, therefore, entitled to judgment as a matter of law on their claims. The defendant argues just the opposite: Fifth Third argues that it did not violate TILA and that the closing documents patently demonstrate the bank's compliance with the statute.

## Discussion

Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and when the movant shows that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court considers the evidentiary record in the light most favorable to the nonmovant and draws all reasonable inferences in its favor. *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). "[T]o avoid summary judgment, a nonmovant 'must produce more than a scintilla of evidence to support his position' that a genuine issue of material fact exists." *Safari Circuits, Inc. v. Chicago School Reform Board of Trustees*, 474 F.Supp.2d 993, 994 (N.D. Ill. 2007) Id. (citing *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001)). "Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A.  <u>The Plaintiffs' Motion for Summary Judgment</u>

As explained, the plaintiffs claim that Fifth Third violated TILA in several different ways relating to the Notice of the Right to Cancel and the TILA statement prepared in connection with the refinancing transaction for the Oswego property. They also argue that Fifth Third violated TILA when, after receiving

6

their notice of rescission, Fifth Third did nothing to effectuate a rescission of that transaction.

    1.   <u>The Notice of the Right to Cancel</u>

The plaintiffs argue that Fifth Third violated TILA in a couple of different respects in connection with the notice of the right to cancel. First, they argue that they did not receive the requisite number of copies of the notice. TILA and the regulations promulgated thereunder provide that "[i]n a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to *each consumer entitled to rescind* . . . . 12 C.F.R. §236.23(b)(1)(emphasis added). "A failure to provide two copies of the Notice of the Right to Cancel is grounds for rescission." *Briscoe v. Deutsche Bank National Trust Company*, No. 08 C 1279, 2008 WL 4852977, at *3 (N.D. Ill. Nov. 7, 2008)(citing 12 C.F.R. §226.23(a)(3)).

Although they were married, Mr. Christensen and Ms. Shea each had the right to rescind – indeed, the notice itself states that "[e]ach of the borrowers/owners in this transaction has the right to cancel." Each plaintiff should have been provided with two copies of the notice. And two means two. "Regulation Z demands two copies. This is not a situation in which there is any room for some kind of substantial compliance rule. Two copies means two copies, not one." *Marr v. Bank of America*, 662 F.3d 963, 968 (7th Cir. 2011)(citing 12 C.F.R. § 226.23(b)(1)).

The plaintiffs have offered evidence – namely, their testimony and the closing file – suggesting that they received, at most, three copies total, one short of the number of copies required. Along with the deposition transcripts, the plaintiffs submitted what is purported to be the entire universe of documents they received in connection with the closing, which they allege they received on April 12, 2007; the file includes three copies of the Notice of Right to Cancel. *See* Plaintiffs' Rule 56.1 Statement of Facts, Exhibit F-2 (the documents appear at what would be pp. FTB 107-109 but they do not contain Bates stamps). Ms. Shea testified that, although she does not specifically remember how many copies of the notice she and her husband received, the entire set was contained within the envelope she received on April 12, 2007. See Shea Dep., pp. 50-52. Mr. Christensen testified that "[a]ll the documents that were given" were placed in that cabinet on April 12, 2007. Christensen Dep., p. 39. He testified that, upon going through the documents they received after the closing, he is absolutely 100 percent certain that they were given only two copies of the notice of Right to Cancel. *Id.*, pp. 57-58. Ms. Kovac agreed that if the borrowers received less than four copies of the Notice of the Right to Cancel, there would appear to be a problem. Kovac Dep., p. 58-59.

On the flip side, however, is the documentary evidence. The

8

notice of the right to cancel includes a statement that "[t]he undersigned each acknowledge receipt of two copies of <u>Notice of Right to Cancel.</u>" And both Mr. Christensen and Ms. Shea signed the form. This is enough to create an issue of fact as to whether Fifth Third complied with TILA in this respect. Accordingly, the motion for summary judgment as to this claim is denied.

The plaintiffs also argue that the notice gave the wrong date for the deadline to exercise the right to rescind. In any consumer credit transaction in which the lender retains a security interest in the borrowers' home, the borrowers have a right to rescind the transaction within a specified period of time. 15 U.S.C. §1635(a). The right to rescind generally expires three business days after the loan closes. *Id.* But if the lender fails to provide notice of the right to cancel or fails to provide the required material disclosures, the right to cancel is extended; under those circumstances, the right to cancel expires three years after the transaction is consummated. *Id.*, §1635(f); 12 C.F.R. §226.23(a)(3).

If, as the plaintiffs contend, they didn't get the closing documents until April 12, 2007, then the right to cancel did not expire on April 13, 2007 and the notice was clearly erroneous. If, on the other hand, the closing was completed on April 10, 2007, with the plaintiffs receiving their set of closing

documents on that date, then the April 13, 2007 deadline would have been accurate. Similarly, if Fifth Third failed to make the required material disclosures, or failed to provide the requisite number of copies, the right to cancel would have been extended for three years.

Ms. Shea testified that, at the closing, she learned for the first time that she was expected to pay a little over $3,000. Shea Dep., p. 37. She testified that she and her husband considered not proceeding with the closing because of that, but that, in the end, they decided to go ahead. *Id.*, p. 37. She testified that, two days later, on April 12, 2007, she came back to Chicago Title and brought in the money; she testified that, at that point, the closer gave her an envelope, which she took home and stored in a secure location (a locked filing cabinet in her husband's home office). *Id.*, pp. 38-39. She testified that she didn't actually take the documents out of the envelope and look at them until July of 2008, when they brought them to a meeting with their attorney. *Id.*, pp. 39-40.

Mr. Christensen testified that he and his wife bought the house in Oswego in 2006, and refinanced in 2007, on April 10th. *See* Deposition of David Christensen, pp. 8-10 (attached as Exhibit C to Plaintiffs' Rule 56.1 Statement of Facts). Mr. Christensen testified that, when they left the closing, they were not given any documents; he testified that his wife returned to

the title company on April 12, 2007 and then received an envelope of documents, which she brought home and placed in a filing cabinet in his home office. *Id.*, pp. 36-38. The plaintiffs' testimony supports the notion that the deadline specified in the notice was wrong.

To counter this, Fifth Third has offered testimony from Lori Kovac, the escrow closing supervisor at Chicago Title Company who handled the closing for the Christensens in 2007. Ms. Kovac testified that the closing occurred in the company's Naperville office. *See* Deposition of Lori Kovac, pp. 12-13, 26 (attached as Exhibit E to Plaintiffs' Rule 56.1 Statement of Facts). She testified that, as part of her duties as a closing agent, she would have made copies of the "whole entire package" – of every document the customer signed. *Id.*, p. 29. Ms. Kovac testified that she did not specifically remember the Christensens' closing, but that her standard practice was to copy the entire closing file and to give the recommended copies to the customers; based upon that, she believes that, when the Christensens left her office on April 10, 2007, they would have walked out of the building with an entire closing file, including two copies each of the Notice of Right to Cancel. Kovac Dep., pp. 40-45. Ms. Kovac also testified that it was her company's "policy and procedure to hand out the copies of the documents when the closing occurs." *Id.*, p. 57.

Ms. Kovac testified that, if the borrowers received the closing documents on April 12, 2007, and the Notice of Right to Cancel listed April 13, 2007 as the deadline for cancelling, there would appear to be a problem as well. Kovac Dep., p. 62. She testified that she does not remember handing any of these documents to the plaintiffs. *Id.*, pp. 63-64.

Based upon the evidence, the Court finds that issues of fact remain, making summary judgment inappropriate. The plaintiffs both testified that they did not leave the closing on April 10, 2007 with any documents, and that they did not receive the closing documents (including the notice of the right to cancel) until April 12, 2007, when Ms. Shea returned to Chicago Title to deliver a check. If that is true, then they are right: the deadline provided in the notice would not have complied with TILA's requirement that the borrowers be given three days to rescind. In contrast, Lori Kovac, the closing agent for this transaction, testified that her policy and procedure is to provide closing documents on the day of the closing and that it would have been extraordinary for borrowers to leave the closing without closing documents. She testified that, although she did not specifically remember the Christensen/Shea closing, she does not recall borrowers *ever* leaving a closing without closing documents. Additionally, Mr. Christensen and Ms. Shea, by signing the notice, acknowledged receipt of their copies on April

12

10, 2007. This is enough to create an issue of fact as to when the right to rescind expired and whether the deadline identified on the notice complied with TILA.

    2. <u>The TILA Statement</u>

The plaintiffs next argue that Fifth Third included in its finance charges computation numerous items that should not have been included, and that the TILA statement disclosing these charges was, therefore, inaccurate; they argue that, because of this, Fifth Third failed to comply with TILA's requirement for accuracy in material disclosures. More specifically, they argue that Fifth Third included almost $2,000 in charges that should not have been included (items such as a tax service fee, a flood certification, hazard insurance, county property taxes, title insurance and certain title company fees), which then skewed the numbers disclosed in the finance charge, amount financed, and total of payments boxes on the TILA Statement. The plaintiffs do not mention this claim in their reply brief, which suggests that maybe they have decided not to pursue it. But the Court notes that there do appear to be conflicts in the numbers listed on the HUD-1 Settlement Statement and the TILA Statement; according to the former, the principal amount of the Fifth Third loan was $312,000, whereas, according to the TILA Statement, $309,411.50. The Mortgage Note included in the closing file states that the plaintiffs owe Fifth Third $312,000. Thus, it is entirely

13

possible that the TILA Statement is inaccurate, that, instead of disclosing $309,411.50 as the amount financed, it should have disclosed $312,000. But the Court will not make the plaintiffs' case for them. They have not really explained how the TILA Statement fell short in any of the disclosures deemed to be "material" under the statute. If they plan to pursue the claim in this lawsuit, they will need to do so. Certainly, they have not demonstrated that they are entitled to judgment as a matter of law as to this claim.

3. <u>Failure to Take Steps to Effectuate a Rescission</u>

Finally, the plaintiffs allege that, after they exercised their right to cancel, Fifth Third violated TILA by failing to take steps to effectuate a rescission of the transaction. Under TILA, if a borrower "timely elects to rescind the loan, within 20 days, the creditor must return to the borrower any earnest money, down payment, or otherwise, and take all necessary action to reflect termination of any security interest created by the transaction." *Schmit v. Bank United FSB*, No. 08 C 4575, 2009 WL 320490, at *2 (N.D. Ill. Feb. 6, 2009)(citing 15 U.S.C. §1635(b)). If, as the plaintiffs have argued, Fifth Third failed to provide the requisite number of copies of the notice of right to cancel, then the time for rescission would extend from three days, to three years. *See* 15 U.S.C. §§1635(a), (f). That would make the plaintiffs' election to rescind timely, and that would

also mean that the July 9, 2008 letter would have triggered Fifth Third's obligations under §1635(b). If all of these facts were established, the plaintiffs would be entitled to summary judgment on this claim, as it is clear that Fifth Third took no steps to effectuate a rescission of the April 10, 2007 transaction. But, as explained above, issues of fact remain as to whether Fifth Third provided the requisite number of copies of the notice of the right to cancel, and issues of fact remain as to whether Fifth Third's inclusion of an April 13, 2007 rescission deadline violated TILA. These issues make summary judgment inappropriate on the plaintiffs' failure to rescind claim.

B. <u>Fifth Third's Motion for Summary Judgment</u>

Fifth Third first argues that it is entitled to summary judgment because the plaintiffs' claims are time-barred, filed outside the one-year statute of limitations period. The plaintiffs acknowledge that some of their damages claims have a one-year statute of limitations, and they have withdrawn those claims. However, the claims dealing with the statutory violations and the claim for damages for failure to rescind remain viable.

Fifth Third next argues that the plaintiffs' rescission claim is barred because they are unable to tender the loan proceeds. The plaintiffs argue that they do, in fact, have the ability to tender the balance of the transaction amount; they

15

represent that Mr. Christensen has a "very high household income" and could easily tender over time, as would likely be the appropriate arrangement. Ms. Shea testified that she used to own her own massage therapy business and later worked at Healthsource in Plainfield; she testified that she last worked in April 2011, and that, at the time of her deposition, she earned no income. Dep., pp. 44-45. She testified that she wants to keep the property, p. 45, and that if she and her husband applied for a refinance mortgage, they would be able to secure one. *Id.*, pp. 45-46. Mr. Christensen testified that he works for Incisent, that he makes $120,000 a year salary, plus a $20,000 bonus paid quarterly. *Id.*, pp. 47-50. He testified that he also has a retirement account and a joint savings account. *Id.*, p. 51. He testified that he and his wife intended to keep their house and that, if necessary, they could obtain another mortgage to pay off the Fifth Third Bank loan. *Id.*, pp. 53-54. The Court finds that issues of fact remain as to whether the plaintiffs could obtain financing to pay off the Fifth Third mortgage; summary judgment in Fifth Third's favor is not appropriate.

Fifth Third next argues that, based on the testimony of the plaintiffs, Fifth Third is entitled to summary judgment on any claimed violation based upon the Truth in Lending Statement; Fifth Third argues that the plaintiffs could find no fault with the disclosures made in that statement. But based upon the

plaintiffs' motion, that would appear to be incorrect. There is some question about whether the "amount financed" disclosure on the TILA Statement is accurate.

Before closing, the Court is compelled to note that this case cries out for a settlement and resolution by the parties. Both sides seem willing to rescind the refinancing transaction, so long as the terms of the rescission are reasonable. The plaintiffs seem willing to tender the balance of the transaction amount, and the bank seems willing to dispense with the foreclosure proceedings. Thus, the parties are strongly encouraged to either discuss a resolution on their own, or to call the Court to schedule a settlement conference. The case is set for status on November 16, 2012 at 9:00 a.m.

### Conclusion

For the reasons explained above, the plaintiffs' motion for summary judgment [#60] is denied as to their claims concerning the Notice of the Right to Cancel and the TILA Statement, as well as to their failure to rescind claim. The defendant's motion for summary judgment [#70] is also denied.

Date: October 24, 2012    E N T E R E D:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT