UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DAVID CHRISTENSEN and CHRISTINE )
V. SHEA, )
 )
               Plaintiffs, ) No. 10 C 2177
 )
    v. )
 ) Magistrate Judge
FIFTH THIRD BANK, and NATIONAL ) Arlander Keys
CITY BANK, )
 )
               Defendants. )


**MEMORANDUM OPINION AND ORDER**

David Christensen and his wife, Christine Shea,[1] reside at 738 Bonaventure Drive in Oswego, Illinois. In 2007, they refinanced the property with a loan from Fifth Third Bank. The closing felt "off" from the outset, and, in 2008, after contemplating the matter for a while, the Christensens consulted an attorney and learned that there were, in fact, problems with the transaction. In July 2008, their attorney sent a letter to Fifth Third advising the bank that the Christensens were rescinding their loan transaction. In response, Fifth Third took no steps to rescind the transaction; it does not appear to have even investigated the legitimacy of the plaintiffs' allegations. Instead, Fifth Third initiated foreclosure proceedings on the

---

[1]Ms. Shea changed her name to Christensen in January 2007. For consistency in these proceedings, the Court will continue to refer to her individually as Ms. Shea, though together she and her husband are sometimes referred to as "the Christensens."

Christensens' home.

On April 8, 2010, the Christensens sued Fifth Third, alleging violation of the Truth In Lending Act. More specifically, the plaintiffs alleged that Fifth Third failed to provide the requisite number of copies of the Notice of the Right to Cancel; included the wrong date on that notice; failed to provide accurate information on the TILA statement; and failed to take steps to rescind the contract once the plaintiffs exercised their right to cancel the transaction.

The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to this Court on September 22, 2010. After denying the parties' cross motions for summary judgment, the Court held a one-day bench trial on April 16, 2013. On August 1, 2013, the Court issued its findings of fact and conclusions of law. Very briefly, the Court determined that the plaintiffs had the right to rescind their loan transaction in July 2008; that their rescission, consistent with the provisions of the Notice, was effective; and that Fifth Third's failure to take steps to rescind the transaction violated the TILA.

After issuing its August 1, 2013 Memorandum Opinion and Order, the Court directed the parties to meet and confer concerning how best to effect a rescission of the loan transaction. To date, the parties have been unable to agree as

to the appropriate steps for a rescission. In particular, although both sides agree that the plaintiffs will be required to tender some amount to effectuate the rescission, the parties are unable to agree as to the tender amount. The purpose of today's order is to resolve the parties' dispute and fix the exact amount to be tendered by the plaintiffs to complete the rescission and close this matter.

## Discussion

The Truth In Lending Act provides that, "[w]hen an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. §1635(b). Additionally, when a lender is found to have violated TILA, a plaintiff in a private action is entitled to recover from the lender "any actual damage sustained by such person as a result of the failure"; "twice the amount of any finance charge in connection with the transaction"; or "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000 . . . ." 15 U.S.C. §1640(a)(1), (2)(A)(I), (2)(A)(iv).

Both sides agree that, to effect the rescission, the plaintiffs must tender some amount to Fifth Third. They disagree

as to the exact amount to be tendered, and each side has now submitted its proposal concerning the appropriate tender amount. Mr. Christensen and Ms. Shea argue that the appropriate tender amount is $267,118.15. And they calculated this amount by starting with the total amount financed, $309,411.50, and subtracting: (1) the payments evidenced at trial (13 payments at $2,128.39, for a total of $27,669.07); (2) a penalty under TILA of twice the finance charges paid at closing (which is this case was $3,312.14, for a total penalty of $6,624.28); and (3) a penalty under TILA for failing to rescind the transaction ($4,000.00 per plaintiff, for a total of $8,000.00).

Fifth Third argues that the appropriate tender amount is $335,091.18, calculated by taking the current outstanding principal of the loan, $308,516.15, subtracting monies paid by the plaintiffs to Fifth Third ($27,399.55, which includes interest, late fees and the finance charges paid at closing), adding monies paid by Fifth Third for the benefit of the plaintiffs ($61,974.58, which includes payments made for real estate taxes and home owners insurance), and subtracting the statutory damages due the plaintiffs (a total of $8,000.00).

The Court finds that the appropriate tender amount is between these two figures. Both sides agree that the starting point is the outstanding principal on the loan. Fifth Third, in its tender submission, provided a transaction history that

4

purports to reflect a principal balance of $308,516.15. And Fifth Third then subtracts interest payments and late fee payments it concedes were made by the Christensens (a total of $24,087.41). Fifth Third does not explain how the loan balance was reduced from the original loan amount (whether it deemed that to be $312,000 or $309,411.50); it would seem reasonable to assume that any reduction would be attributable to payments actually made by the Christensens (which Fifth Third says totaled $24,087.41). But the numbers don't add up. And, if that were the case, Fifth Third, by agreeing to reduce the current balance by the amount of those payments would seem to be double counting in the plaintiffs' favor – something one might not expect.

The plaintiffs argue that the outstanding balance is calculated by taking the amount financed, taken from the TILA Disclosure Statement, which lists the "amount financed" as $309,411.50, and subtracting what the evidence shows the plaintiffs paid in terms of principal and interest. The Court agrees that this is the better approach – and the only approach consistent with the evidence adduced at trial. That evidence – the only competent evidence on the point – shows that the Christensens made 13 payments of $2,128.39, for a total of $27,669.07. This brings the outstanding balance on the loan to $281,742.43.

In *Iroanyah v. Bank of America, N.A.*, the district court

5

determined that the tender amount is correctly calculated by "subtracting finance charges and fees paid from the remaining loan principal." 851 F.Supp. 2d 1115, 1126 (N.D. Ill. 2012), (citing *Nejo v. Wilshire Credit Corp.*, 2010 WL 2951972, at *1 (S.D. Cal. July 21, 2010); *Santos v. U.S. Bank N.A.*, 716 F.Supp.2d 970, 976 (E.D. Cal.2010); *FDIC v. Martinez*, 1997 WL 1764757, at *3-4 (S.D. Ohio June 12, 1997); *In re Lynch*, 170 B.R. 26, 30 (Bankr.D. N.H. 1994)). This approach is consistent with the statute, and the Court follows the same path here. Starting with what the evidence shows to be the remaining loan principal, the Court will subtract the finance charges paid at closing, which everyone agrees were $3,312.14. This brings the tender amount to $278,430.29 (though this is a temporary stop).

As explained above, the Court's determination on tender falls between the parties' positions on the issue. Each side argues in favor of one significant adjustment in the tender amount that the Court rejects. First, the Christensens argue that they are entitled to a reduction for twice the amount of the finance charges they paid at the closing (this would amount to a further reduction in the amount of $6,624.28). Not so. TILA's civil penalty provision does contemplate that the creditor may have to pay the borrower "twice the amount of any finance charge." But the statute expressly says "or" when listing the creditor's potential liabilities. Fifth Third is liable for

twice the finance charges, *or* "not less than $400 or greater than $4,000" but not for both. And, given that the penalty under the latter ($8,000) is greater than twice the finance charges ($6,624.28), the Court assumes the plaintiffs would opt for that.

The Christensens are entitled to recoup the amounts they paid at closing as part of the rescission, which is designed to return the plaintiffs to the position they were in before they entered into this transaction. But that is separate and apart from the civil penalties they may get from Fifth Third. Consistent with the civil penalty provision, the Christensens are entitled to an additional $8,000.00 offset.

Next, Fifth Third has argued that it is entitled to recoup property taxes and insurance payments it made in connection with this property (an upward adjustment in the amount of $61,974.58). This argument is rejected. Fifth Third never raised the subject of taxes or insurance in these proceedings – not on summary judgment, and not at trial. In fact, as the plaintiffs point out, during discovery, Fifth Third took the position that such issues were irrelevant to this case. They cannot be raised for the first time now.

Finally, Fifth Third makes a general fairness argument, suggesting that it would be unfair if the result of this case is such that the plaintiffs will have been allowed to live several years in their home, completely free of charge. The Court finds

this argument unconvincing for two reasons. First, after a trial on the merits, Fifth Third was found to have violated the TILA and plaintiffs' rights thereunder; in other words, Fifth Third lost, and must pay a price for its liability. Second – and maybe more importantly – the reason this case dragged on so long, is that Fifth Third handled this matter poorly. After receiving the Christensens' rescission notice, Fifth Third took no steps to rescind and took no steps to even investigate the legitimacy of their claim. Instead, it initiated foreclosure proceedings, which pretty much ensured that this would be a long, protracted battle. That strategy backfired and allowed the plaintiffs to sit tight while things played out. But Fifth Third really has no one to blame but itself for that.

In sum, the Court finds that the appropriate tender amount is $270,430.29, calculated starting with the unpaid balance of the loan ($309,411.50 - $27,669.07 = $281,742.43), less finance charges paid at closing ($3,312.14), less statutory damages of $8,000.00.

## Conclusion

For the reasons explained more fully above, the Court finds that the appropriate tender amount is $270,430.29. The plaintiffs are to tender this amount to Fifth Third within 120 days of the date of this order. Additionally, Fifth Third is to file its response, if any, to the plaintiffs' motion for attorney

fees [Docket #117] by March 3, 2014.  The Court will rule on the motion for fees by mail.

Dated: January 22, 2014

E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge