UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

DAVID CHRISTENSEN and CHRISTINE     )
V. SHEA,                            )
                                    )
              Plaintiffs,           )    No. 10 C 2177
                                    )
         v.                         )
                                    )    Magistrate Judge
FIFTH THIRD BANK, and NATIONAL      )    Arlander Keys
CITY BANK,                          )
                                    )
              Defendants.           )

**MEMORANDUM OPINION AND ORDER**

On April 8, 2010, David Christensen and his wife, Christine Shea filed suit in this court alleging that Fifth Third Bank and National City Bank[1] violated the Truth In Lending Act in connection with the 2007 refinancing of their primary residence. The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to this Court on September 22, 2010. After denying the parties' cross motions for summary judgment, the Court held a one-day bench trial on April 16, 2013. Thereafter, on August 1, 2013, the Court issued its findings of fact and conclusions of law, finding, *inter alia*, that the plaintiffs had the right to rescind the refinancing transaction in July 2008, that their rescission was effective and that Fifth Third's failure to take steps to

---

[1] On August 9, 2011, the plaintiffs voluntarily dismissed the case with respect to National City.

rescind the transaction violated the TILA. [Docket #107, #108]. The Court directed the parties to meet and confer concerning the appropriate manner to effect the rescission, and, when the parties could not agree, the Court determined that, to effect the rescission, the plaintiffs were required to tender to Fifth Third $270,430.29 within 120 days; the order was issued on January 22, 2014. [Docket #126, #127]. The Court entered judgment in favor of the plaintiffs and against Fifth Third Bank that same day.

Meanwhile, on December 9, 2013, the plaintiffs filed a petition for attorneys' fees and costs [Docket #117]. Fifth Third has now filed a response to the motion. After reviewing both sides' submissions, the Court grants plaintiffs' petition and awards the plaintiffs $175,862.00.

## DISCUSSION

When a lender is found to have violated TILA, a plaintiff in a private action is entitled to recover from the lender "any actual damage sustained by such person as a result of the failure"; "twice the amount of any finance charge in connection with the transaction"; or "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000 . . . ." 15 U.S.C.

§1640(a)(1), (2)(A)(i), (2)(A)(iii). Additionally, "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . ." 15 U.S.C. §1640(a)(3).

A district court must award "reasonable attorney's fees" to a successful TILA plaintiff. 15 U.S.C. §1640(a)(3); *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 261 n. 34 (1975)(noting that "statutes which are mandatory in terms of awarding attorneys' fees include ... the Truth in Lending Act"); *de Jesus v. Banco Popular de Puerto Rico,* 918 F.2d 232, 233 & n.3 (1st Cir. 1990)(fees are mandatory under TILA); *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 802 (6th Cir. 1996) (same); *cf. Zagorski v. Midwest Billing Servs., Inc.,* 128 F.3d 1164, 1166 n. 3 (7th Cir. 1997)(citing *de Jesus* with approval in holding that fee awards are mandatory for a successful plaintiff under the Fair Debt Collections Practices Act). As with most fee-shifting statutes, "the district court [starts by] multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011)(internal quotation marks and some alterations in original omitted). This

3

starting point, called the lodestar, may then be adjusted based on the factors set forth in *Hensley v. Eckerhart,* 461 U.S. 424 (1983). *See Anderson v. AB Painting & Sandblasting Inc.,* 578 F.3d 542, 544 & n.1 (7th Cir. 2009).

In their motion, the plaintiffs seek $202,861.50[2] in fees and $3,052.57 in costs. Initially, Fifth Third argues that the motion for fees should be denied in its entirety because the plaintiffs have not tendered the amount required to effect the rescission. As Fifth Third correctly notes, the Court has determined that, to effect the rescission of the refinancing transaction, the plaintiffs must tender to Fifth Third $270,430.29 by, roughly, May 22, 2014. But the statute does not condition the right to attorney's fees on the rescission; rather, the statute provides for an award of fees and costs "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title . . . ." 15 U.S.C. 1640(a)(3). The Court has already determined that the plaintiffs have a right of rescission. An award of fees and costs is appropriate now, and

---

[2] The plaintiffs actually say in their motion that they are seeking $202,932 in fees. The Court assumes this difference is the result of a simple math error. More significantly, if the fees were calculated based on the numbers included in the attorneys' affidavits submitted along with the petition, the plaintiffs would be seeking $205,272 (a combined total of 456.16 hours, billed at the rate of $450/hour). The Court will use the total derived from the actual billing records.

is not dependent on the plaintiffs actually tendering the amount necessary to effect the rescission.

Fifth Third also argues, in a supplemental response, that the plaintiffs' motion should be denied because it was filed too late. The Court disagrees. Although the Court issued its findings and conclusions in August 2013, it did not enter judgment until January 22, 2014 – after the plaintiffs filed their petition for fees – and it set a briefing schedule for fees at that time.

In addition to these wholesale arguments, Fifth Third also argues that the amount of the requested award is excessive. More specifically, Fifth Third challenges both the hourly rates charged and the amount of time billed. Turning to the former first, according to the plaintiffs' motion, there were two attorneys involved in this case and one paralegal; the attorneys billed time at the rate of $450/hour, and the paralegal billed time at the rate of $90/hour.

The plaintiffs argue that the rates charged are reasonable for the attorneys involved. In support of their motion, they note that their lead attorney, Douglas Matton, has been a licensed attorney in the State of Illinois for a little over 19 years, and that he has "concentrated a large part of his practice in the representation of homeowners against lenders . .

. ." Plaintiffs' Petition for Attorneys' Fees and Costs, p. 3 [Docket #117]. The plaintiffs further note that William Ransom, the other attorney involved in the case, has been a lawyer in the State of Illinois for a bit longer – 19 years, 7 months. *Id.*, p. 4. Additionally, the plaintiffs have submitted affidavits from both attorneys outlining their credentials and experience. According to Mr. Matton's affidavit, in his almost 20-year career, he has "concentrated his practice in civil litigation, contractual and commercial matters, encompassing a wide variety of issues, but in particular, representing Homeowners against Lenders, in Cook, DuPage, Kane, Lake, Will and Kendall Counties, Illinois"; he also represents that he is a member of the trial bar for this district and has "successfully litigated numerous cases" in this district, and that he has tried "numerous jury and bench trials as sole or lead counsel. . . ." Affidavit of Douglas M. Matton, ¶¶3-5 (attached as Exhibit C to Plaintiffs' Petition for Attorneys' Fees and Costs). According to Mr. Ransom's affidavit, he is a member of the trial bar in this district and has, in his almost 20-year career, tried "numerous jury and bench trials as sole or lead counsel." Affidavit of William H. Ransom, ¶¶3, 7 (attached as Exhibit D to Plaintiffs' Petition). Mr. Ransom also states that he worked as a sole practitioner from 1994 to 2004 representing clients in

numerous areas, mostly involving litigation, that he then became a partner at Newman Raiz, a firm concentrating on contract litigation, and that, since January 1, 2011, he is again on his own, representing clients in numerous areas mostly involving litigation. *Id.*, ¶¶4-6.

To be sure, both attorneys have significant experience as trial lawyers. But, as Fifth Third correctly points out, it is not clear that either attorney has significant experience litigating TILA cases. In fact, neither has said anything about how many TILA cases he has been involved with.

Having said that, this was, without question a TILA case, and numerous other courts in this district have upheld awards in TILA cases that were calculated based on hourly rates in the ballpark of those requested here. *E.g., Lippner v. Deutsche Bank National Trust Co.*, No. 07 C 448, 2009 WL 1406671, at *3 (N.D. Ill. May 19, 2009)(citing *Jones v. Ameriquest Mortg. Co.*, 2009 WL 631617, at *4 (N.D. Ill. 2009)(finding hourly rates of $465 for the main partners on a TILA case to be reasonable); *Hamm v. Ameriquest Mortg. Co.,* 549 F.Supp.2d 1018, 1022 (N.D. Ill. 2008)(reducing a request for $550 an hour for the partners representing the plaintiff in a TILA case to $450 an hour); *Turner v. Beneficial Nat. Bank,* 405 F.Supp.2d 929, 933 (N.D. Ill. 2005)(awarding fees for an attorney in a TILA case based on

7

an undisputed hourly rate of $475); *Payton v. New Century Mortgage Co.,* 2004 WL 524693, at *2 (N.D. Ill. 2004)(finding hourly rates of $370 for the main partners on a TILA case to be reasonable)).

    Fifth Third argues that $450/hour is unreasonable. In support of its argument, Fifth Third cites *Iroanyah v. Bank of America*, No. 09 C 94, 2013 WL 268635 (N.D. Ill. Jan. 24, 2013). In that case, the court held that $375 was a reasonable hourly rate for the lawyers involved – one of whom had litigated 56 cases in this district and recently been awarded fees in a TILA case at the rate of $350/hour. *Id.*, 2013 WL 268635, at 2. But in that case, the attorney involved had, a few years earlier, in a similar case, been awarded fees at a rate that was $150 less than what he was seeking in that case; the passage of a few years and an additional twelve cases was not enough to justify so big an increase; instead, the court awarded counsel an extra $25/hour. *Id.*, 2013 WL 268635, at *2. The $375 hourly rate awarded in *Iroanyah* is lower than the rates allowed in the cases cited above. This may be a function of the attorneys' relative experience, or the complexity of the case; on the record before it, the Court cannot say. However, based upon the cases cited above, and upon the experience and credentials of the attorneys involved here, the Court is satisfied that the rates requested

are reasonable and very much in line with rates typically allowed in these types of cases. The Court also finds that the paralegal rate requested here is reasonable; indeed, Fifth Third has not argued otherwise.

In sum, the Court finds that the requested hourly billing rates are reasonable, given the experience of the attorneys and given the complexity of this case. Although it may have seemed like a simple case back in 2008 when the plaintiffs first brought it to Mr. Matton, this case turned out to be anything but. And it was made particularly nettlesome by the way Fifth Third responded to the rescission notice and by the fact that the plaintiffs were forced to take the case to trial to vindicate their rights under the TILA.

The Court turns next to the number of hours billed. According to the affidavits submitted by the plaintiffs, Mr. Matton "reasonably expended 353.25 hours" on this case and Mr. Ransom "reasonably expended 102.91 hours" on the case. Matton Affidavit, ¶7; Ransom Affidavit, ¶10. In addition to the affidavits, the plaintiffs provided the Court with the actual billing logs and time sheets, which yield a slightly different calculation – 341.75 hours for Mr. Matton and 107.67 hours for Mr. Ransom. As explained, the Court will use the actual time logs, which cover tasks performed on the case since July 1,

9

2008, along with the initials of the person performing the work and the number of minutes billed, in calculating the award.  *See* Plaintiffs' Petition, Exhibit B.  The Court has reviewed the time logs with a fine-toothed comb and finds that, with some exceptions, the time billed is reasonable.

First, the time logs submitted by the plaintiffs reflect tasks performed in connection with the case against National City, which was named as a defendant in this lawsuit.  The plaintiffs settled their dispute with National City, however, and should not be able to recover from Fifth Third fees incurred in connection with that entity.  According to Fifth Third, the time logs reflect 19 hours, 5 minutes billed exclusively on National City matters and another 19 hours, 15 minutes billed on tasks relating to both defendants.  Fifth Third proposes disallowing all of the former and half of the latter, and the Court finds that this is reasonable.  On this basis, the Court will strike 23.8 hours billed at the rate of $450/hour, for a total reduction of $10,710.00.

Fifth Third also argues that certain time entries should be disallowed for lack of detail and for the use of "block billing."  The Court disagrees.  Although there are, in many cases, several tasks lumped together in a single days' entry, the Court is able to track the tasks performed and determine,

for the most part, the reasonableness of the time billed for those tasks.

Fifth Third also argues that certain entries are excessive and unreasonable relative to the tasks actually performed. The Court agrees that there are a couple of instances where the hours billed are excessive relative to the tasks performed. For example, in connection with the motion to dismiss and/or stay filed in Kendall County, Mr. Matton spent over 12 hours – too much for an attorney with significant experience in litigating these types of cases. The Court will disallow 4 hours of time, for a reduction of $1,800.00.

Additionally, Mr. Matton and Mr. Ransom billed a combined total of almost 90 hours in connection with summary judgment proceedings. This is simply too much – especially because the case involves a limited number of documents and very few witnesses. The Court finds that a total of 60 hours is reasonable for summary judgment briefing in this case, and will, therefore, disallow 28.25 hours, for a total reduction of $12,712.50.

The billing records also show that the attorneys were billing time for administrative tasks, such as mailing, preparing federal express packages, calling the court on administrative matters such as ordering transcripts and

clarifying dates, filing documents, etc. These are not the kinds of tasks anyone should be paying for at an attorney's hourly rate. The Court will disallow 5 hours on this basis, for a total reduction of $2,250.00. The Court finds that the remainder of the time billed by the attorneys is reasonable.

Turning to costs, the plaintiffs seek an award of costs in the amount of $3,052.57. This amount includes: $350 for the filing fee; $123 in court costs in Kendall County; $380.70 in transportation costs; $313.70 in copying costs; $1,721.50 in court reporter and transcript fees; $130 in deposition witness fees; and $33.67 in postage and delivery costs.

Under Federal Rule of Civil Procedure 54(d)(1) "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Additionally, "the costs of the action" are recoverable under 15 U.S.C. 1640(a)(3). Costs recoverable under Federal Rule of Civil Procedure 54(d)(1) are enumerated in 28 U.S.C. § 1920, and include: (1) "fees of the clerk and marshal;(2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) docket fees under section 1923 of this title; and (6) compensation for court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

Because the plaintiffs have not provided any documentation demonstrating that the copying costs they seek to recover were for copies necessarily obtained for use in the case, the Court will disallow them.  So too the costs they claim for court reporter and transcript fees.  Additionally, the lack of documentation to support these costs also prevents the Court from assessing the reasonableness of the per page rates charged for copying and transcription.  And there is nothing to suggest that the plaintiffs are entitled to recover transportation costs or costs associated with postage and delivery.  So those costs too will be disallowed.  The Court will allow the plaintiffs to recover the $350 for the filing fee and the $123 in court costs in Kendall County.

## CONCLUSION

For the reasons explained above, the plaintiffs' petition for attorneys' fees and costs [Docket #117] is granted. The Court awards the plaintiffs attorneys' fees in the amount of $175,389.00, and costs in the amount of $473.00, for a total award of $175,862.00.

Dated: March 10, 2014

E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge